STATE OF NORTH CAROLINA v. DEBORAH MAE AINSWORTH, DEFENDANT
AND DUNCAN GRAHAM AINSWORTH, DEFENDANT

No. 9223SC6

(Filed 2 March 1993)

1. **Criminal Law § 44 (NCI4th)— aider and abettor—guilt of first degree offense—no allegation of aiding and abetting required in indictment**

   A person who aids or abets another in the commission of first degree rape is guilty of first degree rape, and it is not necessary that the indictment charge defendant with aiding and abetting.

   **Am Jur 2d, Rape § 28.**

2. **Criminal Law § 45 (NCI4th)— mother guilty of first degree rape of son—aider and abettor**

   A mother may be found guilty of first degree rape on a theory of aiding and abetting when her twelve-year-old child engaged in intercourse with an adult woman in her presence and the mother did not take any reasonable steps to prevent the intercourse.

   **Am Jur 2d, Rape § 28.**

3. **Rape and Allied Offenses § 1 (NCI3d)— statutory rape—criminal mens rea not element**

   There was no merit to defendant's contention that the State failed to show that defendant had any criminal *mens rea*, since criminal *mens rea* is not an element of statutory rape.

   **Am Jur 2d, Rape § 16.**

4. **Rape and Allied Offenses § 19 (NCI3d)— indecent liberties with own child for own sexual gratification—sufficiency of evidence**

   The jury could reasonably infer that defendant wilfully engaged in an immoral, improper, or indecent liberty with her child to arouse or gratify her own sexual desire where the State presented evidence which tended to show that defendant knowingly engaged in anal intercourse with her husband in the presence of her child, engaged in "vaginal intercourse" with another woman in the presence of her child,

and watched her child engage in vaginal intercourse with an adult woman; therefore, the court on appeal did not reach the State's argument that neither statute nor case law required that the sexual gratification required for indecent liberties be that of the defendant.

**Am Jur 2d, Assault and Battery § 24.**

5. **Rape and Allied Offenses § 7 (NCI3d) — first degree rape — mandatory life sentence — no cruel and unusual punishment**
    The imposition of a mandatory life sentence for defendant's first degree rape conviction did not constitute cruel and unusual punishment.

**Am Jur 2d, Rape § 115.**

6. **Rape and Allied Offenses § 5 (NCI3d) — first degree rape of stepchild — aiding and abetting — sufficiency of evidence**
    Evidence was sufficient to withstand defendant's motion to dismiss a charge of first degree rape based on aiding and abetting where it tended to show that a woman who shared the same bed with defendant and his wife heard defendant call his stepchild down to the bedroom; when the child walked into the room, defendant, his wife, and the woman were all lying naked on the bed; the child testified that defendant pulled his shorts and underwear halfway off; the woman heard defendant tell the child to go to her side of the bed; and when the child engaged in vaginal intercourse with the woman, defendant and his wife, lying in the same bed, were also engaged in a sexual act.

**Am Jur 2d, Rape § 88.**

7. **Rape and Allied Offenses § 19 (NCI3d) — indecent liberties — sufficiency of evidence**
    The jury could reasonably infer that defendant wilfully engaged in taking an immoral, improper or indecent liberty with a child to arouse or gratify his own sexual desire where the evidence tended to show that defendant called the child into his bedroom to watch sexual activity between the child's mother and another woman; called the child over to the bed and then pulled the child's shorts and underwear halfway off; knowingly engaged in anal intercourse with the child's mother in front of the child; instructed the child to have the other

woman perform oral sex upon him; watched as the child engaged in vaginal intercourse with the other woman; and called the child over to him to observe while he (defendant) was ejaculating.

**Am Jur 2d, Assault and Battery § 24.**

8. **Criminal Law § 322 (NCI4th)— first degree rape—indecent liberties—charges against mother and stepfather—joinder proper**

The trial court did not abuse its discretion by granting the State's motion for joinder of first degree rape and indecent liberties cases against a mother and her husband who allegedly raped the mother's twelve-year-old son. N.C.G.S. § 15A-926(b)(2).

**Am Jur 2d, Assault and Battery § 24.**

9. *Criminal Law § 361 (NCI4th)— ruling on motions at trial— delay in signing orders and placing in record—defendant not prejudiced*

Where the trial court ruled on defendant's motions to suppress and for change of venue at trial, defendant was not prejudiced by the court's nearly four-month delay in signing the orders and placing them in the record.

**Am Jur 2d, Motions, Rules and Orders § 22.**

Appeal by defendants from judgments entered 6 June 1991 by Judge James A. Beaty in Wilkes County Superior Court. Heard in the Court of Appeals 10 February 1993.

Defendant Deborah Mae Ainsworth was indicted and convicted of first degree rape and taking indecent liberties with a minor child, her son. She was sentenced to consecutive prison terms of life plus three years. Defendant Duncan Graham Ainsworth was indicted and convicted of first degree rape, sexual activity by a substitute parent and taking indecent liberties with a minor child, Deborah Ainsworth's son. He was sentenced to consecutive prison terms of life plus seven and one half years.

The evidence presented by the State tends to show the following: Deborah Ainsworth's twelve year old son (hereinafter referred to as "the child") lived in a two story three bedroom home in Roaring River, North Carolina with his mother, his stepfather, Duncan Ainsworth, and a baby sitter, Jack Nunnary. In June or

July of 1990 the child's parents, both long-distance truck drivers, brought Brenda Morrell home with them from a trip. The child's stepfather introduced the child to Brenda as his "mom's girl friend." The child testified that Brenda was also a "babysitter" (sic). Deborah, Duncan and Brenda shared a common bedroom, containing one king size bed, on the first floor of the home. The child and Jack Nunnary slept in separate bedrooms located on the second floor. The child was able to see his parents' bed through a vent that passed between his room and his parents' room.

The child testified that late one evening in August 1990, his stepfather called him downstairs. The child was twelve years old at this time. The child got out of bed and went down to his parents' bedroom. The bedroom was dark, but the child was able to see because of an upstairs light that "would shine downstairs[.]" When the child walked into his parents' bedroom he sat down on a couch where he could see his mother, stepfather and Brenda because his "dad" said "me and your mom agreed" "that [he] could watch." All three were lying on the bed naked. His mother was lying face down, his stepfather was lying face up and Brenda was lying on her side rubbing lotion on his mother.

After a few minutes the child's stepfather "called" him over to the bed and pulled his shorts and underwear half way off. The child pulled them the rest of the way off, and then sat down on the corner of the bed where he watched his mother and Brenda having "intercourse." The child described the "intercourse" as his "mom stick[ing] her finger up Brenda's vagina." At the same time that Deborah was engaged in "intercourse" with Brenda, Duncan was engaged in anal intercourse with Deborah. After watching this, Duncan made a "fingering" motion to the child. The child duplicated the gesture in court by holding up his hand and using his thumb. He testified that his stepfather was pointing to his mouth while making this gesture. The child testified that he "didn't know what he was talking about[.]" His stepfather then mouthed something to the child who testified, "I could read and I read his lips kind of. . . . He said get on top of her, and then let her give you a blow job. . . . He just said it like in lips." The child then testified: "[a]fter my mom was done with Brenda, I got on top of Brenda and had intercourse." While the child was lying on top of Brenda and engaged in intercourse, Duncan was on his side facing Deborah, and Deborah was in the middle of the bed lying on her side facing Brenda. Neither Deborah, Duncan nor

Brenda said anything while the child was engaged in intercourse with Brenda. After the child completed this act, his stepfather called him by name and said, "[G]o take a cold shower." As he was leaving, his stepfather stopped him and said that he wanted to show him something. The child walked back over to his stepfather who showed him "some white stuff, which was semen that was coming out of his penis." His stepfather then said, "This is, this is white stuff that comes out of your penis, and that shows that, and that gets women pregnant and it makes them feel good." The child then left, took a cold shower and went to bed.

The child also testified that he had sexual intercourse with Brenda on two other occasions when neither of his parents were present. On a third occasion, Brenda got out of the shower and called the child over to the bathroom door and asked him "if [he] wanted to play house." The child understood that to mean to have sexual intercourse. He tried to tell her to be quiet because Jack Nunnary had come home. Brenda came out of the bathroom, rubbed up against the child, saw Jack and ran back into the bathroom. Early the next morning Deborah and Duncan returned home and learned what had happened. Deborah "got really, really mad" and told Brenda to "go get your own stuff and get out" of the house. Deborah told the child, "I was upset because Brenda was having sex with you behind my back." Duncan also "got real mad and backed [the child's] mom up about kicking [Brenda] out." He said, "I'm behind Deborah one hundred percent about why you was having sex behind our backs."

The child also testified that Brenda returned to the defendants' home a couple of weeks later. Brenda walked into the defendant's bedroom, took some of Deborah's clothes, and told the child to go pack because he was going on a long trip with her. Brenda packed some of the child's clothes, and the two hitchhiked for awhile eventually ending up in Maryland. The child was later picked up by the FBI and returned to North Carolina.

Finally, the child testified that he watched a pornographic "New Biker Video" with his parents. He also watched "Debbie Does Dallas" and "Pinocchio," both sexually explicit movies, with his stepfather. Deborah gave the child Playboy magazines which he kept under his bed.

Brenda Morrell, thirty years old at the time of trial, testified, under a grant of immunity, that in June of 1990 she met the defend-

ants while hitchhiking in Pennsylvania. She spent the night with the defendants in a motel room and engaged in an "orgy" involving sexual acts with the defendants. The next morning Brenda began travelling with the defendants and eventually returned to North Carolina with them. During the trip Duncan asked Brenda to be a housekeeper and Deborah asked her to take care of the child.

Brenda testified that she slept in the same bedroom and in the same bed with the defendants. She also testified that her function as housekeeper and baby sitter was to clean, cook and take care of everybody, including the child. She was not paid, but did receive room and board.

Brenda further testified that one night, while Jack Nunnary was at work, Duncan called the child into their bedroom. Brenda was able to see the child come into the room because of a light coming into the room from the hall. At that time the child had on a pair of shorts. Brenda and both defendants were naked. Duncan told the child to go to Brenda's side of the bed. The child pulled off his clothes and walked over to Brenda's side of the bed. Brenda did not see the child have any contact or conversation with Duncan before going to her side of the bed. The child got on top of her and engaged in vaginal intercourse with her. At that time Deborah was lying beside Brenda watching while Duncan was behind Deborah having sex with her. After about fifteen minutes, Brenda heard Jack Nunnary pull up into the driveway. Duncan told the child to leave the room and to take a shower. At that time Deborah was still beside Brenda. Earlier in the same day, Duncan told Brenda in the presence of Deborah that the child wanted to watch Deborah and Brenda. Deborah did not say anything.

Brenda also testified that she engaged in other sexual acts with the child out of the presence of his parents, and that on another occasion, Jack Nunnary overheard her tell the child, "Let's play house[,]" by which she meant to engage in "sexual activity." Jack later told the defendants what he had seen and heard. As a result of this, Deborah hit Brenda and told Brenda to leave the house. Deborah also told Brenda that Brenda was not going to abuse her child. Finally, Deborah told Brenda, "I told you once before to be careful, and if you got caught that I had to put you out." Duncan was also upset.

Finally, Brenda testified that when she later returned to the defendants' home the child packed his clothes and on his own de-

cided to go with her on her trip. Brenda attempted to dissuade him from going.

In a separate trial Brenda was convicted of two counts of first degree sexual offense, two counts of first degree rape, two counts of indecent liberties and one count of abduction of a child. Each conviction related to misconduct with the twelve year old child. Brenda was sentenced to two consecutive life terms in prison.

Defendants appeal from entry of judgment.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James Peeler Smith, for the State.*

*Gregory J. Brewer for the defendant-appellant, Duncan Graham Ainsworth.*

*Dennis R. Joyce for the defendant-appellant, Deborah Mae Ainsworth.*

EAGLES, Judge.

*Deborah Mae Ainsworth's Appeal*

I. Motion to dismiss

Defendant Deborah Ainsworth first argues that the trial court erred by denying her motion to dismiss the charges of first degree rape and indecent liberties. We disagree.

> In considering this motion, the trial court was required to view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it. If there was substantial evidence — whether direct, circumstantial, or both — to support a finding that the offense charged was committed and that defendant committed it, the case was for the jury and the motion to dismiss was properly denied.

*State v. Degree*, 322 N.C. 302, 307-08, 367 S.E.2d 679, 683 (1988) (citations omitted).

A. First Degree Rape

1.

[1] Defendant appears to argue in her brief that the first degree rape indictment was insufficient because it failed to charge her explicitly with aiding and abetting. Her brief states:

STATE v. AINSWORTH

[109 N.C. App. 136 (1993)]

Deborah Ainsworth was tried for this offense under an indict-ment which charged that she ". . . willfully and feloniously did carnally know and abuse [her son]." The question of abuse aside, Deborah Ainsworth did not carnally know her twelve year old son. . . . However, Brenda Morrell did. During one episode of vaginal intercourse between [the child] and Brenda Morrell, Deborah Ainsworth was in the same bed with them, having sex with her husband.

The jury had to decide whether the defendant was "guilty of first degree rape because of aiding and abetting. . . ."

This issue, although addressed in the context of armed rob-bery, has already been resolved against the defendant. *State v. Ferree*, 54 N.C. App. 183, 184, 282 S.E.2d 587, 588 (1981) ("[A] person who aids or abets another in the commission of armed robbery is guilty under the provisions of N.C. Gen. Stat. § 14-87, and it is not necessary that the indictment charge the defendant with aiding and abetting."). Accordingly, this argument is overruled.

2.

[2] Defendant next questions whether a mother may be found guilty of first degree rape on a theory of aiding and abetting when her twelve year old child engaged in intercourse with an adult woman in her presence and the mother did not take any reasonable steps to prevent the intercourse. Defendant maintains that this conduct does not fall within the traditional definition of one who aids or abets another commit a crime.

The State argues that *State v. Walden*, 306 N.C. 466, 293 S.E.2d 780 (1982) controls resolution of this issue. In *Walden*, evidence was presented that a mother was present when her small child was hit repeatedly with a belt over an extended period of time. During the assault, the mother looked on but did not say or do anything to stop the beating. On appeal our Supreme Court was faced with the issue of "whether a mother may be found guilty of assault on a theory of aiding and abetting solely on the basis that she was present when her child was assaulted but failed to take reasonable steps to prevent the assault." *Id.* at 468, 293 S.E.2d at 782. Answering the question in the affirmative, our Supreme Court held:

[W]e believe that to require a parent as a matter of law to take affirmative action to prevent harm to his or her child

or be held criminally liable imposes a reasonable duty upon the parent. Further we believe this duty is and has always been inherent in the duty of parents to provide for the safety and welfare of their children, which duty has long been recognized by the common law and by statute. This is not to say that parents have the legal duty to place themselves in danger of death or great bodily harm in coming to the aid of their children. To require such, would require every parent to exhibit courage and heroism which, although commendable in the extreme, cannot realistically be expected or required of all people. But parents do have the duty to take every step reasonably possible under the circumstances of a given situation to prevent harm to their children.

In some cases, depending upon the size and vitality of the parties involved, it might be reasonable to expect a parent to physically intervene and restrain the person attempting to injure the child. In other circumstances, it will be reasonable for a parent to go for help or to merely verbally protest an attack upon the child. What is reasonable in any given case will be a question for the jury after proper instructions from the trial court.

. . . . It remains the law that one may not be found to be an aider or abettor, and thus guilty as a principal, solely because he is present when a crime is committed. It will still be necessary, in order to have that effect, that it be shown that the defendant said or did something showing his consent to the criminal purpose and contribution to its execution. But we hold that the failure of a parent who is present to take all steps reasonably possible to protect the parent's child from an attack by another person constitutes an act of omission by the parent showing the parent's consent and contribution to the crime being committed.

*Walden* at 475-76, 293 S.E.2d at 786-87 (citations omitted).

Here, the defendant failed to take any steps to prevent the attack on her child. Indeed, the State's evidence shows that the defendant lay on the same bed as the one in which her twelve year old child was being raped without uttering a single word in his defense. Moreover, at that time there did not appear to be any danger to the defendant. This conduct clearly falls within the *Walden* holding.

STATE v. AINSWORTH

[109 N.C. App. 136 (1993)]

Defendant argues that *Walden* is factually distinguishable from the instant case because, unlike *Walden*, "[t]here clearly is no physical harm, attack, small child or retarded child involved in this case." We disagree. While the threat of physical harm, including death, to the child in *Walden* was arguably more immediate than that here, it was no less severe. We would be blind to both the cold reality of today's world of sexually transmitted diseases and emotional damage resulting from sexual abuse if we were to hold that the child here was placed at any lesser risk than the child in *Walden*. Moreover, as was elicited during the sentencing hearing below, the child here was exposed to an event which could have severe psychological repercussions requiring long term treatment.

Furthermore, we note that our decision also comports with the more recent holding in *State v. Oliver*, 85 N.C. App. 1, 354 S.E.2d 527, *disc. review denied*, 320 N.C. 174, 358 S.E.2d 64 (1987). In *Oliver*, the victim, a sixteen year old girl with a full scale IQ of 66 or less, testified that her mother was in bed with her at the time that she was raped by another person, and that her mother was also touching her during that time. Our Court held that there was sufficient evidence to find that the mother had the opportunity to avert the rape but failed to do so. Our Court then concluded, based on *Walden*, that the mother was guilty of aiding and abetting the second degree rape of her child.

Defendant's argument is overruled.

3.

[3] Defendant next argues that the State failed to show that the defendant had any criminal *mens rea*. Criminal *mens rea* is not an element of statutory rape. *State v. Rose*, 312 N.C. 441, 445, 323 S.E.2d 339, 342 (1984) ("Consent is no defense if in fact the child was not [over the prescribed age], even if defendant, by reason of the child's appearance or representations, believed in good faith that the consenting child was over the prescribed age."). Defendant argues, however, that "[b]oth state and federal constitutions require that a crime punishable by life in prison require some *mens rea*, U.S. Const. Amend. XIV; N.C. Const. Art. I, §§ 19, 23, 24." We have carefully considered this argument and find it to be without merit.

4.

Finally, during oral argument defendant contended that the trial court's instruction on aiding and abetting incorrectly explained the duty of a parent to protect her child. This argument has been abandoned by defendant's failure to bring it forward in her appellate brief. N.C.R. App. P. 28(b)(5). Nevertheless, in our discretion and pursuant to N.C.R. App. P. 2, we have carefully reviewed the instruction and find it to be without error.

### B. Indecent Liberties

[4]  Defendant next argues that the trial court erred by failing to dismiss the indecent liberties charge. We disagree.

In order to maintain a conviction for indecent liberties

the State must prove (1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he wilfully took or attempted to take an [immoral, improper] or indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Rhodes*, 321 N.C. 102, 104, 361 S.E.2d 578, 580 (1987). "[I]t is not necessary that there be a touching of the child by the defendant in order to constitute an indecent liberty within the meaning of N.C.G.S. 14-202.1." *State v. Truman*, 52 N.C. App. 376, 377, 278 S.E.2d 574, 575 (1981). Moreover, sexual gratification may be inferred from the evidence relating to the defendant's actions. *Rhodes*, 321 N.C. at 105, 361 S.E.2d at 580.

Defendant argues that the State failed to present evidence that she improperly, immorally or indecently touched the child, that she induced the child to touch her, or that she induced the child to touch Brenda in order to arouse and gratify her own sexual desire. The State argues that neither statute nor case law requires that the sexual gratification be that of the defendant. Because we find evidence from which a jury could find that Deborah's sexual desires were aroused or gratified, we do not reach the argument raised by the State.

Only two elements are even arguably at issue here: (1) that the defendant willfully took or attempted to take an immoral, improper or indecent liberty with a child (2) for the purpose of arous-

STATE v. AINSWORTH

[109 N.C. App. 136 (1993)]

ing or gratifying sexual desire. The State presented evidence which tended to show that the defendant knowingly (1) engaged in anal intercourse with Duncan in the presence of her child; (2) engaged in "vaginal intercourse" with another woman in the presence of her child; and (3) watched her child engage in vaginal intercourse with an adult woman. We hold that the jury could reasonably infer from these acts that the defendant wilfully engaged in an immoral, improper or indecent liberty with the child to arouse or gratify her own sexual desire. This argument is overruled.

## II. Sentencing

[5] Defendant next argues that the imposition of a mandatory life sentence for her first degree rape conviction constitutes cruel and unusual punishment. In *State v. Davis*, 101 N.C. App. 12, 398 S.E.2d 645 (1990), *disc. review denied*, 328 N.C. 574, 403 S.E.2d 516 (1991), this Court said:

> Our Supreme Court has rejected such an argument on many occasions. *State v. Spaugh*, 321 N.C. 550, 556, 364 S.E.2d 368, 373 (1988) ("imposition of sentences of life imprisonment for such offenses [first degree rape and first degree sexual offense] does not violate the prohibition against cruel and unusual punishments")[.]

*Id.* at 23, 398 S.E.2d at 652. Accordingly, this assignment is overruled.

### Duncan Graham Ainsworth's Appeal

### I. Motion to Dismiss

Defendant Duncan Ainsworth first argues that the trial court erred by denying his motion to dismiss the charges of first degree rape, sexual activity by a substitute parent and indecent liberties. We disagree.

### A. First Degree Rape

[6] Defendant argues that the trial court erred by failing to dismiss this charge because (1) there was insufficient evidence that the defendant aided or abetted Brenda and (2) the defendant did not have the requisite *mens rea*. We disagree.

> The mere presence of the defendant at the scene of a crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make

him guilty of the offense. To sustain a conviction of the defend-
ant, as [a] principal . . ., the State's evidence must be suffi-
cient to support a finding that the defendant was present,
actually or constructively, with the intent to aid the perpe-
trator in the commission of the offense should his assistance
become necessary and that such intent was communicated to
the actual perpetrator. Such communication of intent to aid,
if needed, does not, however, have to be shown by express
words of the defendant, but may be inferred from his actions
and from his relation to the actual perpetrator. "When the
bystander is a friend of the perpetrator and knows that his
presence will be regarded by the perpetrator as an encour-
agement and protection, presence alone may be regarded as
encouragement."

*State v. Amerson*, 316 N.C. 161, 166-67, 340 S.E.2d 98, 101 (1986)
(quoting *State v. Rankin*, 284 N.C. 219, 223, 200 S.E.2d 182, 185
(1973) (citations omitted).

Defendant, citing what could be viewed as exculpatory evidence,
argues that the evidence presented at trial does not support his
first-degree rape conviction. We disagree. The State presented the
following evidence at trial: (1) Brenda heard the defendant call
the child down to the bedroom; (2) when the child walked into
the room the defendant was lying naked on the bed with Deborah
and Brenda who were also naked; (3) the defendant and his wife,
Deborah, had been sharing their bed with Brenda for some time;
(4) the child testified that Duncan pulled his shorts and underwear
half way off; (5) Brenda heard the defendant tell the child to go
to her side of the bed; and (6) when the child engaged in vaginal
intercourse with Brenda, Duncan and Deborah, lying in the same
bed, were also engaged in a sexual act. We hold that this evidence,
taken in the light most favorable to the State, is sufficient to
withstand the defendant's motion to dismiss the charge of first
degree rape based on aiding and abetting. *See State v. Amerson*,
316 N.C. 161, 340 S.E.2d 98 (1986).

## B. Sexual Activity by a Substitute Parent

Defendant next argues that the trial court erred by denying
his motion to dismiss the charge of sexual activity by a substitute
parent under G.S. § 14-27.7. Defendant was convicted based on
the theory of aiding and abetting.

STATE v. AINSWORTH

[109 N.C. App. 136 (1993)]

Defendant did not object at trial to the trial court's jury instruction on this charge, and he does not argue that it was error. Indeed, defendant states in his brief that "the defendant does not assign as error any convoluted jury charge, the charge being perhaps the best possible effort under the circumstances. . . ." We have examined the evidence presented by the State, and we find it sufficient to prove each element of the offense charged. Accordingly, this argument is overruled.

## C. Indecent Liberties

[7] Finally, defendant argues the trial court erred by denying his motion to dismiss the indecent liberties charge. We disagree.

We previously set out the requisite elements of the indecent liberties charge and relevant related rules in our discussion of Deborah Ainsworth's appeal, *supra*. We need not restate them here. It is sufficient to note that the defendant here argues the State failed to present evidence that (1) his conduct was for the purpose and in fact did arouse or gratify his sexual desires, or (2) that he acted wilfully. The State responds with the same arguments here it made in Deborah Ainsworth's appeal, *supra*.

At trial, the State's evidence tended to show, among other things, that the defendant (1) called the child into his bedroom to watch sexual activity between Deborah and Brenda; (2) called the child over to the bed and then pulled the child's shorts and underwear half way off; (3) knowingly engaged in anal intercourse with Deborah in front of the child; (4) instructed the child to have Brenda perform oral sex upon him; (5) watched as the child engaged in vaginal intercourse with Brenda; and (6) called the child over to him to observe while he (Duncan) was ejaculating. We hold that the jury could reasonably infer from this evidence that the defendant wilfully engaged in taking an immoral, improper or indecent liberty with the child to arouse or gratify his own sexual desire. This argument is overruled.

## II. Sentencing

[5] Defendant next argues that the sentence of life imprisonment for first degree rape violates his constitutional rights to be free from cruel and unusual punishment. This issue has been decided contrary to the position advocated by the defendant. *State v. Davis*, 101 N.C. App. 12, 398 S.E.2d 645 (1990) (citing *State v. Spaugh*,

321 N.C. 550, 556, 364 S.E.2d 368, 373 (1988) ). This assignment is overruled.

### III. Joinder

[8]  By his next assignment, defendant argues that the trial court committed prejudicial error by granting the State's motion to join his trial with the trial of Deborah Ainsworth.

G.S. § 15A-926(b)(2) provides in part:

Upon written motion of the prosecutor, charges against two or more defendants may be joined for trial:

a. When each of the defendants is charged with accountability for each offense; or

b. When, even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

  1. Were part of a common scheme or plan; or

  2. Were part of the same act or transaction; or

  3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of others.

Clearly, defendant's case falls within the parameters of G.S. § 15A-926(b)(2). "When joinder is permissible under the statute, whether to sever trials or deny joinder is a question lodged within the discretion of the trial judge whose rulings will not be disturbed on appeal unless it is demonstrated that joinder deprived defendant of a fair trial." *State v. Ruffin*, 90 N.C. App. 712, 714, 370 S.E.2d 279, 280 (1988). We have examined the record here in light of defendant's arguments under this assignment and conclude that he was not deprived of a fair trial. Accordingly, we hold that the trial judge did not abuse his discretion by granting the State's motion for joinder.

### IV. Motion to Suppress and Motion for Change of Venue

Defendant's sixth assignment of error reads as follows:

6. The trial court erred by not making timely findings of fact and conclusions of law prior to denying defendant's Motions to Suppress and Motion for Change of Venue, in violation of N.C.G.S. 15A-977(f).

**[9]** Under this assignment defendant argues that (1) the trial court did not make timely findings and conclusions; (2) that an x-rated video tape should have been suppressed; (3) that the day before trial a new superseding indictment was issued charging the defendant; and (4) that the findings and conclusions made by the trial court as to defendant's motion to suppress and motion for change of venue were insufficient.

" '[T]he scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal.' " *Boyd v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 536, 543, 424 S.E.2d 168, 172 (1993) (quoting *Koufman v. Koufman*, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991) ). Here, the defendant has only assigned error to the timeliness of the trial court's findings and conclusions. Accordingly, his other arguments are overruled.

In *State v. Horner*, 310 N.C. 274, 311 S.E.2d 281 (1984) the trial court ruled on the defendant's motion to suppress at trial and later reduced his ruling to writing, signed the order and filed it with the clerk. In concluding that the trial court's procedure was permissible, our Supreme Court said:

Where the trial judge makes the determination after a hearing, as in this case, he must set forth in the record his findings of fact and conclusions of law. . . . The statute does not require that the findings be made in writing at the time of the ruling. Effective appellate review is not thwarted by the subsequent order. Defendant has not shown prejudice from the failure of the trial court to make the findings at the time that the rulings were made during the suppression hearing. The assignment of error is meritless.

*Id.* at 279, 311 S.E.2d at 285 (citations omitted).

Here, as in *Horner*, the trial judge ruled on defendant's motion to suppress at trial. After trial, the court reduced his ruling to writing, signed the order and placed it in the record.

Defendant argues, however, that *Horner* is distinguishable because in *Horner* the trial judge delayed only ten days after trial before signing his order while here the trial judge delayed nearly four months before signing his order and placing it in the record. We disagree. The determinative issue is whether defendant was prejudiced by the delay. The defendant has failed to show

that he was prejudiced by the failure of the trial court to make more prompt findings and conclusions on his motion to suppress.

Similarly, we hold that the defendant has failed to show any prejudice resulting from the trial court's failure to make more timely findings and conclusions on his motion for a change of venue. Accordingly, this assignment is overruled.

No error.

Judges COZORT and WYNN concur.