STATE OF NORTH CAROLINA v. DAVID ROY EGGERT

No. 9226SC619

(Filed 15 June 1993)

**Evidence and Witness § 1026 (NCI4th) — trafficking in LSD — possession of LSD — exclusion of hearsay statements as to ownership — reversible error**

In a prosecution of defendant for trafficking in LSD by possession, the trial court committed reversible error by excluding hearsay statements allegedly made by a person arrested at the same time and place as defendant to a second person arrested at the same time and place as defendant, but the court did not err in excluding the first person's statements to defendant, since the first person allegedly told the second person that he felt bad about defendant's having been arrested because the LSD was in fact his and not defendant's; the statement was clearly against the first person's penal interest; the first person was unavailable as a witness because he asserted his privilege against self-incrimination; there were sufficient corroborating circumstances to indicate the trustworthiness of the statement, including the fact that the first person was seated next to defendant in a van, the drugs were found where defendant was seated which was necessarily in close proximity to the first person, and the first person admitted owning a bag found by officers which contained drug paraphernalia and "one suspected hit of LSD"; but the first person's statements to defendant indicated that he knew that LSD was not defendant's, but stopped short of claiming ownership; and the first person's statements to defendant therefore were not against his penal interest. N.C.G.S. § 8C-1, Rule 804(b)(3).

**Am Jur 2d, Evidence § 620.**

Appeal by defendant from judgment entered 20 November 1991 by Judge A. Leon Stanback, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 May 1993.

Defendant was indicted and convicted of trafficking in lysergic acid diethylamide (LSD) by possession. He was sentenced to fourteen years in prison.

At trial the State's evidence tended to show the following: On 11 June 1991 Officer Faulkenbury of the Charlotte Police Department's Street Drug Interdiction Squad was patrolling the Charlotte Coliseum during a Grateful Dead concert. Officer Faulkenbury was working on a team which included Agent Sellers of the North Carolina Alcohol Law Enforcement Division of the Department of Crime and Control and Public Safety and Officer Sauciuc, a Charlotte police officer assigned to the Vice and Narcotics Division.

At approximately 7:00 p.m. Officer Faulkenbury and his teammates saw three people standing beside a van with an open sliding door. The defendant and Mr. Burton were seated in the van on a bench seat. As Officer Faulkenbury approached the van, he saw the defendant smoke from a bong, a device used to smoke marijuana. The defendant handed the bong to Mr. Burton, seated closest to the van's door, who in turn handed the bong to Mr. Malezewski, who was standing beside the van. Officer Faulkenbury walked over to the van and detected "a very strong odor of marijuana[.]" Officers arrested the defendant, Mr. Burton, Mr. Malezewski and a fourth person standing outside the van holding two bongs.

After handcuffing and searching Mr. Malezewski and the person holding the two bongs outside the van, officers instructed Mr. Burton to step out of the van. He complied and was searched. Officers then instructed the defendant to step out of the van. Officer Faulkenbury searched the defendant and found a small square "containing 80 plus hits of LSD" in defendant's left front overalls pocket. Officer Sauciuc handcuffed the defendant to Mr. Burton. At the same time Agent Sellers called Officer Faulkenbury's attention to a small box that "he had found from underneath Mr. Eggert when Mr. Eggert had stood up." The box contained "numerous suspected hits of LSD[.]" The officers also found a bag which contained a marijuana pipe, a marijuana cigarette and a small ceramic egg containing a small square of LSD. Mr. Burton claimed ownership of the bag, but did not claim to own the box containing the LSD.

Agent Sellers testified that he entered and secured the van prior to Mr. Burton or the defendant exiting the van. When the defendant stood to leave the van, Agent Sellers saw a small box located "exactly right where [the defendant] was sitting." The box, a hard plastic container about three inches by three inches in size, contained approximately 698 doses of LSD. Agent Sellers testified that the LSD in the box and the LSD taken from the defendant's pocket were on blotter paper which "appeared to [have] the same design." Officer Sauciuc also testified that the blotter papers had the same design.

The defendant presented the testimony of three witnesses. First, John Malezewski testified *inter alia* that he was handcuffed to Mr. Burton for about fifteen minutes. After the two were separated they were then taken to the Mecklenburg County Intake Center where they were processed. Mr. Malezewski testified out of the jury's presence that while he was in a holding cell with Mr. Burton, Mr. Burton said that "he felt bad because [the defendant] was busted and that he pretty much admitted that the LSD was his." Mr. Malezewski then testified that Mr. Burton "did admit" that the LSD was his. However, he never said "that it was not [the defendant's]."

The defendant then testified in his own behalf. The defendant testified that he spoke with Mr. Burton two or three days after they had been arrested and while they were still in jail. Out of the presence of the jury, defendant testified that although he was not able to remember Mr. Burton's exact words, "basically [Mr. Burton] said that he felt bad for me being arrested, and I said why, and he said because that wasn't your stuff." When the defendant asked Mr. Burton who owned the LSD, Mr. Burton "declined to answer."

Finally, the defendant called Mr. Burton to the stand. However, Mr. Burton asserted his Fifth Amendment privilege against self-incrimination, and refused to testify as to his involvement in the incident involving the defendant.

From judgment imposing sentence, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General L. Darlene Graham, for the State.*

*Charles L. Morgan, Jr., for the defendant-appellant.*

STATE v. EGGERT

[110 N.C. App. 614 (1993)]

EAGLES, Judge.

The sole issue on appeal is whether the trial court committed reversible error by excluding hearsay statements allegedly made by Mr. Burton to Mr. Malezewski and by Mr. Burton to the defendant. Specifically, defendant argues that Mr. Burton made statements admitting that the LSD found in the box underneath the defendant was his and that his statements were admissible as statements made against his penal interests under G.S. 8C-1, Rule 804(b)(3).

"G.S. 8C-1, Rule 804(b)(3) provides that, if the declarant is not available as a witness, statements against the declarant's interest are not excluded by the hearsay rule." *State v. Agubata*, 92 N.C. App. 651, 655, 375 S.E.2d 702, 704 (1989). The State concedes in its brief that because "[Mr.] Burton asserted his privilege against self-incrimination, he was clearly an unavailable witness." Our attention focuses now on whether the statements were against Mr. Burton's penal interest as required by Rule 804(b)(3).

" 'Rule 804(b)(3) requires a two-pronged analysis.' *State v. Wilson*, 322 N.C. 117, 134, 367 S.E.2d 589, 599 (1988). First, the trial court must be satisfied that the statement is against the declarant's penal interest. Second, corroborating circumstances must clearly indicate the trustworthiness of the statement. G.S. 8C-1, Rule 804(b)(3)." *Agubata*, 92 N.C. App. at 655, 375 S.E.2d at 705.

Here, Mr. Malezewski testified, outside the presence of the jury, that Mr. Burton "did admit" that the LSD found in the box was his. The defendant testified, outside the presence of the jury, that although he was not able to remember Mr. Burton's exact words, "basically [Mr. Burton] said [to me] that he felt bad for me being arrested . . . because that [LSD in the box] wasn't your stuff." However, when the defendant asked Mr. Burton who the LSD belonged to, Mr. Burton declined to answer.

Clearly, the alleged statement made by Mr. Burton to Mr. Malezewski was against Mr. Burton's penal interest. Moreover, we find sufficient corroborating circumstances to clearly indicate the trustworthiness of the statement: (1) Mr. Burton was seated next to the defendant in the van; (2) the drugs were found where the defendant was seated, necessarily in close proximity to Mr. Burton; and (3) Mr. Burton admitted owning a bag found by officers which contained drug paraphernalia and "one suspected hit of LSD." Accordingly, we reverse and remand for a new trial.

The State argues, however, that the alleged statement should not have been admitted because Mr. Malezewski was unable to "recall the exact statement allegedly made by Mr. Burton." We disagree. Mr. Malezewski testified on direct examination as follows:

Q. What did Larry Burton tell you, Mr. Malezewski?

A. He told me it was—well, he told me he felt bad because David was busted and that he pretty much admitted that the LSD was his.

Q. When you say that he pretty much admitted—

A. He did admit.

Q. He did admit?

A. Yes.

                    * * *

Q. Tell me again, I am not clear, tell the Judge for the record exactly what you recall Mr. Burton telling you. What was the conversation about?

A. We were talking about being arrested and all that, and he brought up about David being charged with trafficking and possession of LSD, and Larry said he felt bad about that and I asked him, well, it was yours, wasn't it, and he said yes.

On cross-examination Mr. Malezewski testified:

Q. His words were that he owned it. Is that right? Is that your testimony, that it was his?

A. He didn't say own. He said it was his.

MR. WALKER: That is all I have, Your Honor.

THE COURT: Let me ask him one thing. Did he tell you, his words were—tell me what his exact words were again.

A. Sir, this was in July. I can't remember his exact words. Our conversation was about him feeling bad about David being charged for that, and he admitted that LSD was his.

THE COURT: But you testified that you asked him was it yours.

A. Yes, I did ask him that particular comment. We talked for a while.

THE COURT: I mean, did you ask him was it yours, is it yours?

A. Yes, sir.

THE COURT: And what did he say?

A. He said yes.

THE COURT: Did he ever tell you—

A. I asked him why he felt bad.

THE COURT: Did he ever tell you that it was not David's?

A. Not specifically, no, but I assumed that it was when he said that it was his.

THE COURT: But he didn't tell you that?

A. No, sir, he didn't tell me that.

Mr. Malezewski's testimony was sufficiently definite to form a statement as defined by our hearsay rules. Accordingly, the State's argument is overruled.

The State also argues that Mr. Burton would not understand the statement's "damaging potential" and that the alleged statement was not trustworthy because it "was made to another prisoner outside the presence of law enforcement officers or personnel. Under these circumstances, Mr. Burton would not necessarily understand that his statement would subject him to criminal liability." This argument is wholly without merit. See State v. Levan, 326 N.C. 155, 388 S.E.2d 429 (1990) (statements against interest were admissible although made to persons outside the presence of law enforcement officers or personnel).

Defendant next argues that the alleged statement made by Mr. Burton to the defendant was admissible as a statement against penal interest. We disagree. The defendant testified:

Q. Tell the court reporter, please, and the Judge the nature of that conversation, what was said.

A. I don't recall the exact words but basically what he said that he felt bad for me being arrested, and I said why, and he said because that wasn't your stuff.

Q. He said, "I know that wasn't your stuff."?

A. Yes.

Q. Very good. Did you respond to him at that point?

A. I just said whose stuff was it and he declined to answer.

Q. He did decline to answer?

A. Yes.

On cross-examination the defendant testified:

Q. You said, in answer to Mr. Morgan's questions that you did not recall his exact words? Isn't that what you said?

A. I don't recall the exact words of the conversation but that is a good part of what I just spoke of. I do recall the words.

"In order for a statement to be a declaration against interest, the statement must expose the declarant to criminal liability. Rule 804(b)(3) (1988)." *State v. Artis*, 325 N.C. 278, 304, 384 S.E.2d 470, 484 (1989), *judgment vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Here, the statements allegedly made by Mr. Burton to the defendant were not against Mr. Burton's penal interest. The State correctly points out in its brief, "[i]t is simply not a crime to know that drugs do not belong to a particular individual." In addition, the defendant admitted that Mr. Burton expressly declined to say to whom the LSD belonged. Accordingly, we conclude that the trial court did not err by excluding Mr. Burton's alleged statements to the defendant.

Finally, we note that the defendant argues that his constitutional rights were violated by exclusion of the alleged statements. " '[T]he scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal.' " *State v. Ainsworth*, 109 N.C. App. 136, 151, 426 S.E.2d 410, 419 (1993) (quoting *Boyd v. Nationwide Mutual Ins. Co.*, 108 N.C. App. 536, 543, 424 S.E.2d 168, 172, *disc. review allowed*, 333 N.C. 536, 429 S.E.2d 553 (1993) and *Koufman v. Koufman*, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991) ). Here, the defendant's sole assignment of error does not purport to raise any constitutional challenge to the exclusion of the statements attributed to Mr. Burton. Accordingly, this argument is overruled.

New trial.

Judges LEWIS and McCRODDEN concur.