**STATE v. POE**

[119 N.C. App. 266 (1995)]

———————————

STATE OF NORTH CAROLINA v. ELBERT RANDOLPH POE AND DAVID LADELL BEASLEY

No. COA94-867

(Filed 20 June 1995)

### 1. Assault and Battery § 25 (NCI4th)— brick throwing incident—aiding and abetting assault—sufficiency of evidence

Defendant Poe was properly found guilty of aiding and abetting the commission of the offense of assault with a deadly weapon inflicting serious injury and damage to personal property not only because he was present when the crimes were committed but because his actions in driving the car from which several items were thrown by his passengers at other cars and in throwing items at other cars himself showed his consent to the criminal purpose and contribution to its execution.

**Am Jur 2d, Criminal Law § 81.5.**

### 2. Evidence and Witnesses § 364 (NCI4th)— prior bad act committed by defendant—evidence admissible

In a prosecution of defendant for assault which occurred when defendants allegedly threw a brick from their car into the victims' car, the trial court did not err in admitting the testimony of one of defendant's passengers that defendant had allegedly committed a prior bad act by throwing a bottle into another vehicle earlier in the evening, since the incident was similar in means

STATE v. POE

[119 N.C. App. 266 (1995)]

and execution and occurred the same evening as the brick throwing incident.

**Am Jur 2d, Evidence §§ 404, 428.**

**3. Trial § 444 (NCI4th)— witness's statement taken into jury room—defendant not prejudiced**

Although the trial court erred in allowing the jury to take the statement of a witness into the jury room over one defendant's objection, the other defendant was not prejudiced, since that defendant had not objected to the jury's request and the witness's statement made no reference to that defendant.

**Am Jur 2d, Trial §§ 1665, 1671.**

**4. Trial § 444 (NCI4th)— witness's statement taken into jury room—defendant prejudiced**

The trial court's submission of a witness's statement to the jury to take to the jury room over one defendant's objection rose to a level of error sufficiently prejudicial to entitle that defendant to a new trial, since the State's entire case rested on the testimony of that witness who himself had pending charges of assault and damage to personal property arising out of this same incident.

**Am Jur 2d, Trial §§ 1665, 1671.**

Appeal by defendants from judgments entered 9 February 1994 by Judge Chase B. Saunders in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 April 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General Margaret A. Force, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant Elbert Randolph Poe.*

*Grant Smithson for defendant-appellant David Ladell Beasley.*

JOHNSON, Judge.

Defendants Elbert Randolph Poe and David Ladell Beasley were indicted for charges of assault with a deadly weapon in violation of North Carolina General Statutes § 14-32(b) (1993) and injury to personal property in violation of North Carolina General Statutes § 14-160 (1993). The cases were joined for trial.

Evidence presented at trial showed the following: Shortly after 9:00 p.m. on 18 April 1993, Brenda Sexton and her sister, Rachel Carter, were traveling north on Eastway Drive toward Central Avenue in Charlotte, North Carolina, in a blue Ford Escort. Ms. Sexton was driving and Ms. Carter was in the passenger seat. As they neared a Starvin' Marvin convenience store, a brick was thrown through the window of the car, shattering the windshield and damaging the hood and interior dash of the car. Ms. Carter heard a loud explosion and felt glass spray across her face. Ms. Sexton had been knocked unconscious. Ms. Carter, who was not injured, brought the car under control after it crossed three lanes of traffic.

Ms. Sexton regained consciousness at the scene. She did not know what had caused her injury, but her eye had been hit and the side of her face smashed and she could not see because of glass and blood. Ms. Sexton was taken to the hospital where she remained for two weeks; the right side of her head and face were surgically reconstructed. By the time of trial she had undergone three operations and more were necessary.

Ms. Carter testified that just before the brick was thrown into the car, she saw two cars, a small red car and a small gray car. She could not see who was inside either vehicle. Immediately after the accident, Ms. Carter saw a brick lying in the back seat; the brick was old, had mortar edges, and was covered with mud. Ms. Carter threw the brick away the following day.

Benjamin Tyrone Carter was one of the people indicted in connection with the assault; Mr. Carter testified for the State pursuant to an arrangement with the State which would result in all charges being dismissed in exchange for his testimony. Mr. Carter testified that he knew defendants from attending Myers Park High School. According to Mr. Carter, he, defendant Poe, defendant Beasley, and Tito Truesdale spent the afternoon of 18 April 1993 together; defendant Poe had his mother's car, a gray four-door Nissan Sentra, and he drove the others; they drove to Freedom Park around 5:00 p.m.; Mr. Carter, who suffers from vertigo, became dizzy and asked to be taken home; and when they left the park, Mr. Truesdale was in the front seat with defendant Poe, the driver, defendant Beasley was in the back seat behind defendant Poe, and Mr. Carter was in the right rear passenger seat. The men stopped at a convenience store and all of them except Mr. Carter went in and got something to eat; they then began to travel on I-77 going toward I-85.

**STATE v. POE**

[119 N.C. App. 266 (1995)]

Mr. Carter testified further that as the four men traveled on I-77, defendant Poe threw a bottle at a blue Nissan 300 ZX which had pulled up beside them; that the driver of the 300 ZX chased the men through downtown Charlotte for approximately ten minutes before defendant Poe was able to lose the 300 ZX; that at defendant Beasley's request, defendant Poe stopped in the parking lot of a Bojangle's beside a Jiffy Lube near Eastland Mall; that defendants got out of the car to use the bathroom; and that when they returned, defendant Beasley was carrying two rocks which had been picked up from the dumpster area. Mr. Carter continued, that defendants got back into the car and headed down Central Avenue; that defendant Beasley threw a rock at an approaching car and asked defendant Poe to pull over again; that defendant Poe stopped at a dry cleaners on Eastway Drive near a Starvin' Marvin store; that defendants got out of the car again and this time defendant Poe picked up a bottle and defendant Beasley picked up some bricks from a nearby wall; and that defendants got back into the car and as they were driving down Eastway Drive, defendant Poe threw the bottle at a Ford Escort and defendant Beasley threw a rock at the car.

Mr. Carter further testified that he looked back and saw the car cross the center lane and enter the wrong lane of traffic; that defendant Poe turned the car around and after defendant Beasley got rid of the second rock, defendant Poe drove past the car Ms. Sexton had been driving and saw that she had been badly injured; and that he asked defendant Poe to take him home and his companions told him "not to fag out" and "go home and call the police." Mr. Carter stated that defendant Poe did not drive Mr. Carter home but he did drive Mr. Truesdale home because Mr. Truesdale "didn't want no part of it"; that defendant Beasley then got in the front seat with defendant Poe and the three men returned to the Starvin' Marvin store and waited as emergency aid was rendered to the victim, Ms. Sexton; and that Mr. Carter and defendants were apprehended as they sat in the car.

Regis L. Morrison was at the scene when the incident occurred and told police that he saw the car from which the brick had come. As a result of this information, Officer George D. Dawkins, the first police officer to arrive at the scene, got into his car and drove about 200 feet to the Starvin' Marvin store where defendants and Mr. Carter were parked. Officer Dawkins and Officer M. D. Burney, who had joined the investigation, approached the car in which defendants and Mr. Carter were seated. Officer Burney put Mr. Carter into his car and Officer Dawkins placed defendants into his car. According to Officer

Burney, Mr. Carter was scared and almost in tears. Before any questioning commenced, Mr. Carter said he wanted to make a statement. He told Officer Burney that defendant Beasley threw the brick through the window of the car Ms. Sexton was driving and that they were involved in another similar incident on Central Avenue where he threw a brick at another car. Mr. Carter was taken to the Law Enforcement Center where he gave a written statement regarding the incident. There was no indication in Mr. Carter's written statement that defendant Poe had thrown a bottle at any car that night.

Pieces of brick and broken rock were found by police in both the Ford Escort driven by Ms. Sexton and on the floorboard in the left rear behind the driver's seat in the gray Nissan Sentra which defendant Poe was driving.

Officer Larry F. Mackins testified that he was dispatched at 9:47 p.m. to investigate a report of damage to a vehicle near Eastway Drive and Central Avenue, less than a mile away from the scene of the incident involving the car Ms. Sexton was driving. A car driven by Robert Dale Johnson had damage to its windshield and the interior dash. Pieces of concrete rock were found inside the car. Officer Mackins, as well as Officer Burney, heard the calls to police regarding the two incidents.

Both defendants presented evidence which tended to exonerate themselves and implicate Mr. Carter. According to defendants' evidence, Mr. Carter had been drinking and was "hyper" and was talking "junk" to people in passing cars. Both defendants testified that during one of their stops, Mr. Carter used a telephone and slammed it down. After slamming down the phone, according to defendant Beasley, Mr. Carter said, "I'm going to hit that bitch in the head"; defendant Poe testified that Mr. Carter said that he was going "to bust the bitch" with a rock because she was with another man. Defendant Beasley denied having any rocks or bricks in the car. His testimony was that while he did not know what had happened, Mr. Carter had to have been the one to throw the brick into the car Ms. Sexton was driving. Defendant Poe testified that Mr. Carter had the brick and that defendant Poe heard "glass breaking" immediately after he saw Mr. Carter roll down a window and put his hand out.

Defendants were found guilty as charged. Each defendant was sentenced to a term of three years imprisonment for the assault conviction and six months for damage to personal property. Defendants have each appealed to our Court.

STATE v. POE

[119 N.C. App. 266 (1995)]

## I. Defendant Poe's Appeal

[1] Defendant Poe first argues that the trial court erred in denying defendant Poe's motion to dismiss the charges where the evidence was insufficient to show each and every element of the crime beyond a reasonable doubt. Defendant Poe was convicted of aiding and abetting the commission of the offense of assault with a deadly weapon inflicting serious injury and also convicted of damage to personal property.

The offense of assault with a deadly weapon is found in North Carolina General Statutes § 14-32(b), i.e., the offense is committed by "[a]ny person who assaults another person with a deadly weapon and inflicts serious injury[.]" The offense of injury to personal property is found in North Carolina General Statutes § 14-160, that "[i]f any person shall wantonly and willfully injure the personal property of another [,]" he shall be guilty of this offense.

As to aiding or abetting, "[it is] . . . the law that one may not be found to be an aider or abettor, and thus guilty as a principal, solely because he is present when a crime is committed. It will still be necessary, in order to have that effect, that it be shown that the defendant said or did something showing his consent to the criminal purpose and contribution to its execution." *State v. Ainsworth*, 109 N.C. App. 136, 144, 426 S.E.2d 410, 415 (1993). "Intent to aid may be inferred from defendant's actions or from his relation to the perpetrator." *State v. Capps*, 77 N.C. App. 400, 403, 335 S.E.2d 189, 191 (1985).

The evidence shows that defendant Poe spent the afternoon and evening of 18 April 1993 with defendant Beasley; that defendant Poe drove his mother's car, a gray four-door Nissan Sentra, throughout this time period; that during the evening, while traveling on I-77 going toward I-85, defendant Poe threw a bottle at a blue Nissan 300 ZX which had pulled up beside them; that, after stopping at defendant Beasley's request, upon their return to the car, defendant Beasley was carrying two rocks which had been picked up from the dumpster area; that, while driving down Central Avenue, defendant Beasley threw a rock at an approaching car; that after stopping again, defendant Poe picked up a bottle and defendant Beasley picked up some bricks from a nearby wall; and that after defendants got back into the car, driving down Eastway Drive, defendant Poe threw the bottle at a Ford Escort and defendant Beasley threw a rock at the car. Based on this evidence, we believe defendant Poe was properly found guilty of

aiding and abetting the commission of the offense of assault with a deadly weapon inflicting serious injury not only "because he [was] present when [the crime was] committed" but because, by his actions, he clearly "show[ed] his consent to the criminal purpose and contribution to its execution." Based on the evidence, we also find defendant Poe was properly found guilty of damage to personal property. This assignment of error is overruled.

**[2]** Defendant Poe next argues that the trial court committed plain error in admitting the testimony of Mr. Carter under N. C. R. Evid. 404 regarding a prior bad act allegedly committed by defendant Poe where the evidence was admitted solely to show defendant Poe's propensity for the type of conduct for which he was being tried and where the unduly prejudicial nature of the testimony far outweighed its probative value. Specifically, defendant Poe argues that the admission of Mr. Carter's testimony regarding the bottle-throwing at the Nissan 300 ZX was improper, pursuant to N. C. R. Evid. 404(a), because it attempted to prove the character of a person to show "that he acted in conformity therewith." The State, however, argues that admission of Mr. Carter's testimony was proper, pursuant to N. C. R. Evid. 404(b), as it was "admissible for other purposes[.]"

Evidence of a defendant's prior bad acts under what is known as the "same transaction" rule is generally admissible if it "forms part of the history of the event or serves to enhance the natural development of the facts." *State v. Agee*, 326 N.C. 542, 547, 391 S.E.2d 171, 174 (1990) (citation omitted). Our Supreme Court has observed that the use of evidence of prior bad acts is guided by two constraints, those being similarity and temporal proximity. *State v. Artis*, 325 N.C. 278, 384 S.E.2d 470 (1989), *death sentence vacated and remanded for new sentencing hearing*, 494 U.S. 1023, 108 L.Ed.2d 604 (1990), 329 N.C. 679, 406 S.E.2d 827 (1991). We believe the trial court properly admitted Mr. Carter's testimony regarding the bottle-throwing at the Nissan 300 ZX because that incident was similar in means and execution and occurred the same evening as the brick-throwing incident involving the car Ms. Sexton was driving. As such, we overrule this assignment of error.

Defendant Poe next argues that defendant was denied the effective assistance of counsel under the sixth and fourteenth amendments to the United States Constitution and under Article I, §§ 19 and 23 of the North Carolina Constitution where defense counsel failed to object and move for a mistrial after Mr. Carter was allowed to testify

regarding a prior bad act allegedly committed by defendant Poe. Because of our resolution of defendant Poe's previous assignment of error, we dismiss this argument.

**[3]** Finally, defendant Poe argues that the trial court committed plain error in allowing the jury to take the statement of Mr. Carter into the jury room over defendant Beasley's objection in violation of North Carolina General Statutes § 15A-1233 (1988). North Carolina General Statutes § 15A-1233 states that "[u]pon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence."

The record indicates that during its deliberations, the jury requested to hear the testimony of defendant Beasley, defendant Poe, and Mr. Carter, and statements written by defendant Poe and Mr. Carter. As to the testimony of defendant Beasley, defendant Poe, and Mr. Carter, the court instructed the jury it would have to rely on what their testimony was in open court. As to the request for defendant Poe's statement, the court denied it because that statement had not been received in evidence. However, the court allowed the request for Mr. Carter's statement, as it had been received in evidence. Defendant Poe did not object to the request for Mr. Carter's statement; defendant Beasley did, however, object.

Plain error is a fundamental error, one which is so prejudicial and so lacking in its elements that it denies a defendant a fair trial. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). The statutory violation committed by a trial judge in allowing a witness' statement to go to the jury over objection is corrected by our Court only when it prejudices the defendant. *State v. Taylor*, 56 N.C. App. 113, 287 S.E.2d 129 (1982). "Such prejudice obtains only when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises; the burden of showing such prejudice is upon the defendant." *Id.* at 115, 287 S.E.2d at 130-31.

Although the trial court did not obtain the consent of all of the parties in allowing Mr. Carter's statement to go to the jury to take to the jury room, we do not find that defendant Poe was prejudiced by this error. Not only did defendant Poe not object to the jury's request at trial, but Mr. Carter's statement made no reference whatsoever to defendant Poe. Therefore, we find this error did not rise to the level of prejudicial error as to defendant Poe.

## II. Defendant Beasley's Appeal

**[4]**  Defendant Beasley's assignments of error have all been addressed earlier in this opinion. For reasons outlined above, we reject all of these assignments of error except the final one: defendant Beasley argues that the trial court committed plain error in allowing the jury to take the statement of Mr. Carter into the jury room over defendant Beasley's objection in violation of North Carolina General Statutes § 15A-1233.

Defendant Beasley argues that

> the jury was improperly allowed over Beasley's counsel's objec-
> tion to give ultimate importance and weight to a written state-
> ment of the State's major witness, Benjamin Carter. The
> statement additionally served to corroborate his trial testimony,
> whereas defendant's testimony and that of his co-defendant [Poe]
> could only be highlighted by the jurors [sic] own individual and
> collective recollections.

We find defendant Beasley's argument persuasive. We note that the State's entire case rested on the testimony of Mr. Carter, who him-self had pending charges of assault and damage to personal property arising out of this same incident. The jury was obviously weighing the testimony of each person who testified in order to arrive at a verdict. By denying the jury's request to hear the testimony of defendant Beasley, defendant Poe, and Mr. Carter, and by allowing the jury to take Mr. Carter's written statement, which directly implicated defend-ant Beasley, into the jury room over defendant Beasley's objection, we believe there exists a reasonable possibility and a reasonable assumption that the jury may have inadvertently given more weight to Mr. Carter's statement. *See Doby v. Fowler*, 49 N.C. App. 162, 270 S.E.2d 532 (1980) (where our Court found prejudicial error where the trial court allowed an exhibit, a bill for payment, to go to the jury; plaintiff had testified about this bill, and defendant had expressed his unwillingness for the bill to go to the jury). *Compare State v. Platt*, 85 N.C. App. 220, 354 S.E.2d 332, *disc. review denied*, 320 N.C. 516, 358 S.E.2d 529 (1987) (where our Court found prejudicial error in allow-ing a witness' statement to go into the jury room over objection by the defendant, where the statement represented the only direct evidence against the defendant); and *State v. Flowe*, 107 N.C. App. 468, 420 S.E.2d 475, *disc. review denied*, 332 N.C. 669, 424 S.E.2d 412 (1992) (where our Court found it was *not* prejudicial error where the trial court allowed the defendant's statement to go to the jury, where the

statement had been previously read in its entirety and in portions to the jury, the victim had positively identified the defendant, the officer who had taken the defendant's statement testified, and the defendant himself testified to pointing a gun at the victim).

Therefore, we find that the trial court's submission of Mr. Carter's statement to the jury to take to the jury room over defendant Beasley's objection rose to a level of error sufficiently prejudicial to entitle defendant Beasley to a new trial.

\* \* \*

In case nos. 93CRS25592 and 93CRS25594 (defendant Poe), no prejudicial error.

In case nos. 93CRS25597 and 93CRS25598 (defendant Beasley), new trial.

Judges COZORT and McGEE concur.