STATE OF NORTH CAROLINA v. EDWARD FRANKLIN BALL

No. 250A88

(Filed 2 March 1989)

**1. Homicide § 21.5— first degree murder—sufficient evidence of premeditation and deliberation**

The State's evidence of premeditation and deliberation was sufficient to support defendant's conviction of first degree murder of his estranged wife where it tended to show that at 10:00 a.m. on the day of the shooting, defendant decided to kill his wife and himself; he wrote a letter to the wife's mother saying that he had made up his mind "to be with her forever," meaning that he was going to kill his wife and himself; defendant met his wife that afternoon and was carrying a loaded semi-automatic pistol when he got into her car; he removed the gun from his pocket and told her that he was going to kill them both; some time later, the wife jumped from the car and ran into a nearby hospital, screaming that defendant had a gun and was going to shoot her; as the wife crouched behind a desk, begging him not to shoot her, defendant fired at least three shots into her back, pausing between shots; and when defendant surrendered to the police, he told them that he was the one who had shot his wife.

**2. Criminal Law § 89.2; Constitutional Law § 75— post-arrest statements—testimony by defendant required before admission—self-incrimination—harmless error**

The trial court in a murder case did not err in the denial of defendant's request to admit his post-arrest statements to the police prior to his testimony because there is no right to corroboration in advance of the testimony of a witness. Even if the trial court infringed upon defendant's Fifth Amendment right against self-incrimination by requiring him to testify as a prerequisite to introducing his statement, the error was harmless beyond a reasonable doubt where the record shows that defendant wanted and intended to testify; defendant got both his post-arrest statement and his testimony before the jury; and defendant has not shown how a different order of presentation, or the admission of his statement as substantive rather than corroborative evidence, would have aided his case.

**3. Homicide § 25— first degree murder—failure to give requested instructions—pattern jury instructions sufficient**

The trial court in a first degree murder case did not err by failing to give defendant's requested instructions on malice, intent to kill, and premeditation and deliberation where the court gave defendant's requested instructions in substance by giving the pattern jury instructions on those elements of first degree murder.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) (1986) from the imposition of a sentence of life imprisonment upon his

conviction of first degree murder before *Stephens, J.,* at the 19 January 1988 Criminal Session of Superior Court, WAKE County. Heard in the Supreme Court 13 February 1989.

*Lacy H. Thornburg, Attorney General, by William Farrell, Jr., Special Deputy Attorney General, for the State.*

*Narley L. Cashwell and Cheryl M. Swart for defendant-appellant.*

WHICHARD, Justice.

In a capital trial, defendant was convicted of the first degree murder of Joyce Ball. At the sentencing hearing, the jury found no aggravating circumstances and recommended a sentence of life imprisonment. We find no error.

The State's evidence, in pertinent summary, showed the following:

Defendant and his wife, Joyce Ball, separated in April 1986. Defendant moved to Florida and Ms. Ball continued to live in Wake County with their child.

Around 19 October 1986 defendant returned to Wake County looking for his wife. During the following week they talked on the telephone several times and they met to talk once. Defendant was upset and angry that she was living with another man.

On 24 October 1986, sometime after 5:30 p.m., witnesses saw Ms. Ball running across the parking lot of Raleigh Community Hospital. Defendant was running after her. Ms. Ball ran through the front door of the hospital. She screamed, "[C]all the police, call the police, help, help, oh, my God, he's got a gun and he's going to shoot me." She ran around a desk and crouched behind it, screaming, "[P]lease don't kill me, please don't shoot me, please, please." As she screamed, defendant held the gun with both hands, pointed it at her back and fired a shot. She screamed. Defendant fired three more shots into her back, pausing a couple of seconds between the shots. Ms. Ball died from bullet wounds to her heart.

Defendant left the hospital and went to a building under construction beside the hospital. During a police search of that building, defendant gave himself up to police officers. Defendant told the officers, "I'm the one you're looking for. I shot her."

Defendant made a post-arrest statement to police. He said that he made up his mind around 10:00 a.m. on the day of the shooting that he was going to kill his wife. He also said that at the time he and his wife were sitting in her car together he had made up his mind to kill her and then kill himself. Defense counsel introduced this statement at trial.

Defendant testified in his own behalf. He stated that he was upset and angry that his wife was living with another man. On 24 October 1986, at about 10:00 a.m., he decided to kill his wife and himself. He wrote a letter to Ms. Ball's mother saying, "I made my mind up to be with her forever." He testified that he meant by this that he planned to kill his wife and kill himself.

Defendant testified that he met his wife at about 5:30 p.m. He had a loaded semi-automatic pistol in his back pocket and intended to kill her, then kill himself. Defendant and his wife parked their cars in the parking lot of Raleigh Community Hospital. Defendant got in his wife's car. After they had been in her car for a while, he took the pistol out of his pocket and told her that he intended to kill her and to kill himself. Defendant testified that they talked for about thirty to forty minutes and that he told her he could not kill her because he loved her and did not want things to end that way. Sometime thereafter, Ms. Ball jumped out of the car and ran. He ran after her into the hospital. Defendant testified that he shot her but did not intend to kill her.

[1] Defendant first contends that the trial court erred in failing to grant his motion to dismiss the first degree murder charge. He argues that the State's evidence failed to show premeditation and deliberation.

Premeditation and deliberation are necessary elements of first degree murder based upon premeditation and deliberation (rather than felony murder). *State v. Jackson*, 317 N.C. 1, 23, 343 S.E. 2d 814, 827 (1986), *vacated on other grounds*, 479 U.S. 1077, 94 L.Ed. 2d 133 (1987). Premeditation means that the defendant thought out the act beforehand for some length of time, however short. *Id.* "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* The State may prove the elements of pre-

meditation and deliberation by circumstantial evidence as well as by direct evidence. *Id.* Among the circumstances to be considered in determining whether a defendant acted after premeditation and deliberation are the want of provocation by the victim, the defendant's conduct and statements before and after the killing, threats and declarations by the defendant before and during the course of the occurrence giving rise to the death of the victim, and the nature and number of the victim's wounds. *Id.*

The evidence in this case shows that at 10:00 a.m. on the day of the shooting defendant decided to kill the victim and himself. He wrote a letter to the victim's mother saying that he had made up his mind "to be with her forever," meaning that he was going to kill the victim and himself. Defendant met his wife that afternoon. He was carrying a loaded semi-automatic pistol when he got into her car. He removed the gun from his pocket and told her that he was going to kill them both. Sometime later, Ms. Ball jumped from the car and ran into the hospital, screaming that defendant had a gun and was going to shoot her. As she crouched behind a desk, begging him not to shoot her, defendant fired at least three shots into her back, pausing between shots. When defendant surrendered to police, he told them that he was the one who had shot her. This evidence is sufficient to support a jury finding of premeditation and deliberation. Therefore, the trial court did not err in denying defendant's motion to dismiss.

[2] Defendant next contends that the trial court erred in denying his request to admit his post-arrest statement to the police prior to his testimony. After the State presented evidence, the trial court considered defendant's request to introduce his post-arrest statement into evidence prior to defendant's taking the stand. Defense counsel stated:

> We intend to call the police officers first and put the statement in evidence, and then listen to the tapes, and what we will do from there we don't know, but we don't intend to call the defendant first, but I can assure the Court, as far as it can be assured, that the defendant is planning to testify. He wants to testify.
>
> I have no reason to believe he won't.

As you know, and as everybody knows, . . ., it's his de-cision, but I have absolutely no reason to believe that he won't testify and I know at least at this point he wants to and we are planning to.

The court asked defendant whether he intended to testify in his own behalf. He answered "[y]es, sir." The court ruled that it would allow defendant's post-arrest statement to come in for cor-roborative purposes, but that defendant would have to testify prior to the admission of the statement.

Defendant argues that his post-arrest statement was admis-sible as substantive evidence under Rule 803(3) of the North Caro-lina Rules of Evidence. He also argues that by requiring him to testify as a prerequisite to introducing his statement, the court violated his Fifth Amendment right against self-incrimination.

This Court has held that "[t]here is no right to corroboration in advance" of the testimony of a witness. *State v. Hinson*, 310 N.C. 245, 256, 311 S.E. 2d 256, 264, *cert. denied*, 469 U.S. 839, 83 L.Ed. 2d 78 (1984). Even if defendant had that right, he has not shown prejudicial error. To show prejudicial error, defendant must show that there is a reasonable possibility that had the error not been committed, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1988); *State v. Martin*, 322 N.C. 229, 238-39, 367 S.E. 2d 618, 623-24 (1988). Defendant has not shown that a reasonable possibility exists that a different result would have been reached had he been allowed to introduce his statement before taking the stand. Further, even assuming that the court infringed upon defendant's Fifth Amendment right against self-incrimination, the error was harmless beyond a rea-sonable doubt. *See State v. Autry*, 321 N.C. 392, 400, 364 S.E. 2d 341, 346 (1988) (error infringing upon a defendant's constitutional rights entitles him or her to a new trial unless the error was harmless beyond a reasonable doubt). The record shows that de-fendant wanted to testify and intended to testify. The court did not force defendant to testify, nor did it refuse to allow him to in-troduce his post-arrest statement into evidence. Defendant got both his post-arrest statement and his testimony before the jury. He has not shown how a different order of presentation, or the admission of his statement as substantive rather than corrobora-

tive evidence, would have aided his case. His contention therefore has no merit.

**[3]** Finally, defendant contends that the trial court erred in its guilt phase instructions to the jury by failing to give defendant's requested instructions on malice, intent to kill, and premeditation and deliberation. The trial court instead gave the pattern jury instructions on these elements of first degree murder. *See* N.C.P.I. Crim. 206.10 (1987). Defendant does not argue that the instructions given were erroneous, but that his requested instructions are more complete and "in keeping with appellate authorities." We have held that a trial court is not required to give a requested instruction verbatim. Rather, when the request is correct in law and supported by the evidence, the court must give the instruction in substance. *State v. Avery*, 315 N.C. 1, 33, 337 S.E. 2d 786, 804 (1985); *State v. Monk*, 291 N.C. 37, 54, 229 S.E. 2d 163, 174 (1976). We have examined defendant's requested instructions and the instructions given here. Because the trial court gave defendant's requested instructions in substance, we find no error.

For the reasons stated, we find that defendant received a fair trial, free from prejudicial error.

No error.