STATE OF NORTH CAROLINA v. DARRYL WILLIAM COLEMAN

No. COA09-307

(Filed 3 November 2009)

**1. Sexual Offenses— sex offense by custodian—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of sex offense by a custodian because: (1) the State presented substantial evidence on each element of N.C.G.S. § 14-27.7(a) and that defendant was the perpetrator of the offense; and (2) the State is not required to present evidence that a defendant knew or should have known the victim was in his custody or in the custody of his principal or employer.

**2. Indecent Liberties— adult in custodial relationship with child—watching included as separate act**

The trial court did not err by denying defendant's motion to dismiss three charges of indecent liberties with a minor. When an adult in a custodial relationship with a child watches that child engage in sexual activity with another person or facilitates such activity, the adult's actions constitute indecent liberties with a minor. Defendant's contention that counts for touching and watching arose from a single transaction was incorrect as there were clearly two separate acts.

**3. Criminal Law— instructions—lapsus linguae**

A *lapsus linguae* instructing the jury on returning a not guilty verdict on all charges was not plain error. The trial court did not commit plain error by instructing the jury on finding defendant guilty or not guilty of the charges against him because the jury would not have reached a different result but for the *lapsus linguae* when considering all the instructions in the context of the entire charge.

**4. Sexual Offenses— sex offense by custodian—instruc-
tion—knowledge that victim was in his custody—not
required**

The trial court did not commit plain error by its instruction to
the jury regarding the charge of sex offense by a custodian
because defendant's knowledge that the victim was in his custody
was not a required element of the charge.

Appeal by defendant from judgments entered 22 May 2008 by
Judge Jesse B. Caldwell, III, in Lincoln County Superior Court. Heard
in the Court of Appeals 15 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General
Sarah Y. Meacham, for the State.*

*Parish, Cooke & Condlin, by James R. Parish, for defendant-
appellant.*

CALABRIA, Judge.

Darryl William Coleman ("defendant") appeals from judgments
entered upon jury verdicts finding him guilty of one count of statu-
tory sex offense, one count of a sex act by a custodian, and four
counts of indecent liberties with a minor. We find no error.

I. BACKGROUND

In June 2006, defendant was employed by Kingspoint Academy
("Kingspoint") at a boys' group home ("the boys' home") in
Lincolnton, North Carolina. Kingspoint also operated a girls' group
home ("the girls' home") in Shelby, North Carolina. Defendant,
who was 40 years old at the time, worked at the boys' home on
the weekends.

On 25 and 26 June 2006, "Allen"[1], who was 15 years old, and
"Jordan," who was under 16 (collectively "the boys") lived in the
boys' home along with five other boys. During the same time period,
defendant worked the 8:00 p.m. to 8:00 a.m. shift and "Kelsey,"
"Dana," and "Taylor" (collectively "the girls") lived at the girls' home.
Kelsey was 14 years old and Dana was 15 years old. On 25 June 2006,
the girls left the girls' home without permission. The girls previously
met Allen and some of the other boys from the boys' home at a
Kingspoint summer camp. The girls called Jordan on the telephone,

---

1. The names of the minors involved in this case have been changed and their
pseudonyms are initially noted in quotations.

told him they were coming over to the boys' home, and defendant was informed of the girls' plans.

When the girls arrived at the boys' home, Allen and Jordan were outside playing basketball. Defendant was also present and told the girls to return when the rest of the staff was asleep. The girls went to a friend's house and got drunk. Later that evening, the girls, still intoxicated, returned to the boys' home. After the girls entered the boys' home through the downstairs windows, defendant told them they could spend the night but that they had to be quiet so they would not awaken the staff. Defendant, Kelsey, and Allen stayed in Allen's room on the first floor of the home.

During the evening, defendant told Dana that she had nice breasts and then touched her breasts. Defendant told Kelsey she had to show him her breasts if she wanted to spend the night. Defendant then touched her breasts. Next, he told Allen to leave the room and when Allen returned, Kelsey was naked. Kelsey performed fellatio on defendant. Subsequently, Allen had sexual intercourse with Kelsey in Allen's room. During the course of Allen and Kelsey's sexual activity with each other, defendant left and re-entered the room repeatedly and watched them having sex. Defendant told Allen, referencing Kelsey, "that's my baby[,] don't hurt her, . . . do her right . . . ."

Early in the morning of 26 June 2006, the girls left the boys' home by climbing out the back window. Taylor called her mother, who picked up the girls. When the girls returned to the girls' home, they went to the office. Dana eventually revealed that they went to the boys' home and described the sexual activity that took place between defendant and Kelsey and between the boys and girls.

Officers of the Lincolnton Police Department ("officers") interviewed the boys and girls. Kelsey admitted she had sex with Allen while defendant watched, that defendant fondled her breasts and that defendant asked for fellatio, which she performed on him. Dana told the officers that defendant told the girls to leave the boys' home and return after the staff was asleep. She further stated defendant felt her breasts, that she saw Kelsey and Allen having sex, and saw Kelsey perform fellatio on defendant and on Jordan. Allen admitted he had sex with Kelsey while defendant watched, and that he also saw defendant grab Kelsey's breast.

On 30 June 2006, defendant voluntarily contacted the officers to give a statement. He was advised of his Miranda rights and signed a written waiver. Defendant admitted that on the evening in question,

he saw both Jordan and Allen each having sex with one of the girls in the boys' group home. Defendant added that after Allen finished having sex with one girl, defendant touched her breast and she performed fellatio on him. Defendant then stated he touched another girl's breast.

Defendant was arrested and charged with statutory rape, statutory sex offense, engaging in a sex act by a custodian, and four counts of indecent liberties with a minor. He was subsequently indicted on all charges except statutory rape. Defendant filed a motion to suppress his statement to the police. The trial court denied the motion.

All charges were joined for trial, which commenced on 19 May 2008 in Lincoln County Superior Court. At the close of the State's evidence and at the close of all the evidence, defendant moved to dismiss each of the charges due to the insufficiency of the evidence. The trial court denied both motions.

On 22 May 2008, the jury returned verdicts of guilty to statutory sex offense, engaging in a sex act by a custodian, and four counts of indecent liberties with a minor. On the statutory rape charge, the trial court sentenced defendant to a minimum term of 230 months and a maximum term of 285 months in the custody of the North Carolina Department of Correction. On the charge of engaging in a sex act by a custodian, defendant received a minimum term of 29 months and a maximum term of 44 months in the custody of the North Carolina Department of Correction, to begin at the expiration of the sentence imposed in the case above. Two of the indecent liberties convictions were consolidated for judgment with the statutory sex offense conviction. For the other two indecent liberties convictions, defendant received a minimum term of 15 months and a maximum term of 18 months in the custody of the North Carolina Department of Correction. The sentence was suspended, and defendant was placed on supervised probation for 36 months upon his release. The trial court also ordered defendant to provide a DNA sample and to pay court costs. Defendant appeals.

## II. MOTION TO DISMISS—SEX OFFENSE BY A CUSTODIAN

[1] Defendant first argues the trial court erred in denying his motion to dismiss the charge of sex offense by a custodian. We disagree.

"This Court reviews a trial court's denial of a motion to dismiss criminal charges *de novo*, to determine 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a

lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Davis*, —— N.C. App. ——, ——, 678 S.E.2d 385, 388 (2009) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "Substantial evidence is evidence that a reasonable mind might find adequate to support a conclusion." *State v. Hargrave*, —— N.C. App. ——, ——, 680 S.E.2d 254, 261 (2009). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom[.]" *Powell*, 299 N.C. at 99, 261 S.E.2d at 117.

The charge of sex offense by a custodian is defined in pertinent part as:

> If . . . a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class E felony. Consent is not a defense to a charge under this section.

N.C. Gen. Stat. § 14-27.7(a) (2007). In the instant case, the State presented substantial evidence on each and every element of N.C. Gen. Stat. § 14-27.7(a) and that defendant was the perpetrator. During the relevant period, defendant was employed by Kingspoint, a corporation, at a boys' group home. At that time, Kelsey was living at a girls' group home operated by Kingspoint. Kelsey performed fellatio on defendant while he worked at his job with Kingspoint.

Defendant further argues the trial court erred in denying his motion to dismiss because the State failed to show defendant knew or should have known Kelsey was in Kingspoint's custody. Defendant believes that knowledge that he was the custodian should be a requirement of the charge of sex offense by a custodian. We disagree.

In construing a statute, it is the duty of the court to "carry out the intent of the legislature." *State v. Ward*, 46 N.C. App. 200, 206, 264 S.E.2d 737, 741 (1980); *State v. Hales*, 256 N.C. 27, 30, 122 S.E.2d 768, 771 (1961); *State v. Hudson*, 11 N.C. App. 712, 182 S.E.2d 198 (1971); *United States v. Jones*, 471 F.3d 535, 539 (4th Cir. 2006) (determining the mental state required for the commission of a crime requires construction of the statute and inferring the intent of the legislature). "The first step in determining a statute's purpose is to examine the

statute's plain language." *State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004). "As a cardinal principle of statutory interpretation, '[i]f the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms.' " *State v. Watterson*, —— N.C. App. ——, ——, 679 S.E.2d 897, 900 (2009) (quoting *Hyler v. GTE Prods. Co.*, 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993)).

The legislature's purpose in enacting N.C. Gen. Stat. § 14-27.7 was "prevention of sexual abuse by institutional personnel of persons in an institution's care." *State v. Raines*, 319 N.C. 258, 262, 354 S.E.2d 486, 489 (1987); *see also Outmezguine v. State*, 97 Md. App. 151, 166, 627 A.2d 541, 548 (1993) (holding that such laws are designed to protect children from exploitation and that the general rule is that the victim's status is an element of such an offense but the defendant's knowledge of that status is not). The plain language of N.C. Gen. Stat. § 14-27.7 prohibits sexual contact with certain victims by certain persons (*e.g.*, parents and stepparents, those acting *in loco parentis*, those with custody of the victim, and various school personnel).

According to the plain language of N.C. Gen. Stat. § 14-27.7(a), the State is not required to present evidence that a defendant knew or should have known the victim was in his custody or in the custody of his principal or employer. The legislature has considerable latitude in defining elements of a crime. *State v. Trimble*, 44 N.C. App. 659, 665-66, 262 S.E.2d 299, 303 (1980).

"When a legislative body 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion.' " *N.C. Dept. of Revenue v. Hudson*, —— N.C. App. ——, ——, 675 S.E.2d 709, 711 (2009) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525, 107 S.Ct. 1391, 1393, 94 L. Ed. 2d 533, 537 (1987)).

It appears our legislature did not include knowledge of the victim's status as one of the required elements or conditions in the statute. In *State v. Oakley*, this Court set out the elements of N.C. Gen. Stat. § 14-27.7(a) in the context of a defendant charged with sexual activity by a substitute parent. 167 N.C. App. 318, 322, 605 S.E.2d 215, 218 (2004). "This crime requires a finding that the defendant had (1) assumed the position of a parent in the home, (2) of a minor victim, and (3) engaged in a sexual act with the victim residing in the

home."·*Id.* The *Oakley* Court clearly did not include the element of knowledge as a requirement and did not discuss the element of knowledge of the victim's status or condition.

In portions of N.C. Gen. Stat. § 14-27.1 (2007) *et seq.*, titled "Rape and Other Sex Offenses," our legislature included statutes which clearly include the element of knowledge as a requirement. For example, a person is guilty of second degree rape if he has vaginal intercourse with a person "[w]ho is mentally disabled, mentally incapacitated, or physically helpless, *and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless*." N.C. Gen. Stat. § 14-27.3(a)(2) (2007) (emphasis added).

Further support for statutes that do not include the element of knowledge in offenses similar to the one in the instant case can be found in other jurisdictions. In addition to North Carolina, more than "[f]orty jurisdictions have at least one criminal provision outlawing the abuse of a position of power to obtain sexual intercourse." Patricia J. Falk, *Rape by Fraud and Rape by Coercion*, 64 Brook. L. Rev. 39, 102 (1998); *see* ALA CODE § 14-11-31 (LexisNexis 2008); ALASKA STAT. § 11.41.434 (2008); ARIZ. REV. STAT. ANN. § 13-1419 (2008); ARK. CODE ANN. §§ 5-14-110, 124, 125, 126, 127 (2009); CAL. PENAL CODE § 289.6 (West 2009); COLO. REV. STAT. § 18-3-405.3 (2009); CONN. GEN. STAT. ANN.· § 53a-71 (West 2009); DEL. CODE ANN. tit. 11, §§ 769, 770, 772, 773 (2008); D.C.CODE §§ 22-3013, 3015 (2009); FLA. STAT. ANN. § 794.011 (West 2009); GA. CODE ANN. § 16-6-5.1 (2009); HAW. REV. STAT. §§ 707-731, 732 (2005); IDAHO CODE ANN. 18-6110 (2009); ILL. COMP. STAT. ANN. 5/12-13 (West 2009); IND. CODE ANN. § 35-42-4-7 (LexisNexis 2009); IOWA CODE ANN. § 709.4 (West 2009); KAN. STAT. ANN. § 21-3520 (2008); KY. REV. STAT. ANN. §§ 510.060, 090, 110, 120 (West 2008); ME. REV. STAT. ANN., tit. 17A, § 253 (2008); MD. CODE ANN., Criminal Law § 3-308 (LexisNexis 2009); MASS. GEN. LAWS ANN. ch. 268, § 21A (West 2009); MICH. COMP. LAWS ANN. §§ 750.520b, 520c, 520d, 520e (West 2009); MINN. STAT. ANN. §§ 609.342, 343, 344, 345 (West 2009); MISS. CODE ANN. § 97-3-95 (2009); NEV. REV. STAT. §§ 201.540, 550 (2007); N.H. REV. STAT. ANN. §§ 632-A:2, A:3, A:4 (2008); N.J. STAT. ANN. § 2C:24-4 (West 2009); N.M. STAT. § 30-9-13 (2008); N.Y. PENAL LAW § 130.05 (McKinney 2009); N.D. CENT. CODE §§ 12.1-20-06, 06.1, 07 (2009); OHIO REV. CODE ANN. § 2907.03 (LexisNexis 2009); OKLA. STAT. tit. 21, § 1111 (2008); OR. REV. STAT. § 163.452 (2005); PA. CONS. STAT. ANN. § 3124.2 (West 2009); R.I. GEN. LAWS § 11-25-24 (2008); S.C. CODE ANN. § 16-3-655 (2008); S.D. CODIFIED LAWS § 24-1-26.1 (2003); TENN.

CODE ANN. §§ 39-13-527, 532 (2009); TEX. PENAL CODE ANN. § 22.011 (Vernon 2009); UTAH CODE ANN. §§ 76-5-404.1, 406 (2008); VT. STAT. ANN. tit. 13, §§ 3252, 3257, 3258 (2009); VA. CODE ANN. § 18.2-370.1 (2009); V.I. CODE ANN. tit. 14, §§ 1700, 1700a, 1708 (2009); WAH. REV. CODE ANN. §§ 9A.44.050, 093, 096, 100 (West 2009); W. VA. CODE ANN. § 61-8D-5 (LexisNexis 2009); WIS. STAT. ANN § 948.095 (West 2008); WYO. STAT. LAW § 6-2-303(a)(vi) (2009).

In reviewing the statutes from numerous jurisdictions, only three of them include a requirement that the state must prove a defendant knew the victim's status. In Oregon, for the crime of custodial sexual misconduct in the first degree, the state must show that the defendant:

(a) Engages in sexual intercourse or deviate sexual intercourse with another person or penetrates the vagina, anus or penis of another person with any object other than the penis or mouth of the actor *knowing that the other person is*:

    (A) In the custody of a law enforcement agency following arrest;

    (B) Confined or detained in a correctional facility;

    (C) Participating in an inmate or offender work crew or work release program; or

    (D) On probation, parole, post-prison supervision or other form of conditional or supervised release; and

(b) Is employed by or under contract with the state or local agency that:

    (A) Employs the officer who arrested the other person;

    (B) Operates the correctional facility in which the other person is confined or detained;

    (C) Is responsible for supervising the other person in a work crew or work release program or on probation, parole, post-prison supervision or other form of conditional or supervised release; or

    (D) Engages the other person in work or on-the-job training pursuant to ORS 421.354 (1).

OR. REV. STAT. § 163.452 (2005) (emphasis added). In Vermont, for the crime of sexual exploitation of an inmate:

(a) No correctional employee, contractor, or other person providing services to offenders on behalf of the department of corrections or pursuant to a court order or in accordance with a condition of parole, probation, supervised community sentence, or furlough shall engage in a sexual act with a person *who the employee, contractor, or other person providing services knows*:

(1) is confined to a correctional facility; or

(2) is being supervised by the department of corrections while on parole, probation, supervised community sentence, or furlough, where the employee, contractor, or other service provider is currently engaged in a direct supervisory relationship with the person being supervised. For purposes of this subdivision, a person is engaged in a direct supervisory relationship with a supervisee if the supervisee is assigned to the caseload of that person.

VT. STAT. ANN. tit. 13; § 3257(a)(1), (2) (2009) (emphasis added). In Wyoming, for the crime of sexual assault in the second degree, the state must show that the defendant committed "sexual intrusion" on the victim and, *inter alia*:

(vii) The actor is an employee, independent contractor or volunteer of a state, county, city or town, or privately operated adult or juvenile correctional system, including but not limited to jails, penal institutions, detention centers, juvenile residential or rehabilitative facilities, adult community correctional facilities, secure treatment facilities or work release facilities, *and the victim is known or should be known by the actor to be a resident of such facility or under supervision of the correctional system*[.]

WYO. STAT. ANN § 6-2-303(a)(vii) (2009) (emphasis added).

In the instant case, based on our analysis above, the State was not required to present evidence of defendant's knowledge of the victim's status or condition in order to secure a conviction. Defendant's assignment of error is overruled.

### III. MOTION TO DISMISS—INDECENT LIBERTIES WITH A MINOR

[2] Defendant next argues the trial court erred in denying his motion to dismiss his three charges of indecent liberties with a minor in cases 06 CRS 52198, 06 CRS 52199, and 06 CRS 52206. We disagree.

One count was based on the allegation that defendant fondled Kelsey's breasts. Another count was based on allegations the defendant encouraged, facilitated, and aided Kelsey to engage in sexual acts with Allen and/or Jordan and/or watched Kelsey engage in sexual acts with other juveniles. The third count was based on allegations the defendant encouraged, facilitated, and/or aided Allen to engage in sexual acts with Kelsey and/or watched such sexual acts.

The elements of indecent liberties with a minor are:

(1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Thaggard*, 168 N.C. App. 263, 282, 608 S.E.2d 774, 786-87 (2005); N.C. Gen. Stat. § 14-202.1 (2007). "[S]exual gratification may be inferred from the evidence relating to the defendant's actions." *State v. Ainsworth*, 109 N.C. App. 136, 146, 426 S.E.2d 410, 416 (1993). When an adult who has a custodial relationship with a child watches that child engage in sexual activity with another person or facilitates such activity, the adult's actions constitute indecent liberties with a minor. *Id.* at 147, 426 S.E.2d at 417.

In the instant case, defendant told Kelsey she had to show her breasts as a condition for her to stay at the boys' home. Defendant then fondled Kelsey's breasts and removed her bra. Defendant left Allen's room and when he returned he saw Kelsey and Allen engaged in sexual intercourse. During this time, defendant repeatedly left and re-entered Allen's room to watch Kelsey and Allen have sex. At the time of the above incidents, defendant was 40 years old, and Allen and Kelsey were both under 16 years old. Substantial evidence sustained the jury verdicts of guilty of indecent liberties with a minor.

Defendant argues that there was insufficient evidence to support two convictions based on the above stated acts because the two counts were not two separate criminal acts because they arose from a single transaction. We disagree.

In *State v. Laney*, the defendant was convicted of two counts of indecent liberties with a minor. 178 N.C. App. 337, 339, 631 S.E.2d 522, 523 (2006). This Court vacated one conviction because the acts of the defendant—touching the victim's breasts and then putting his

·hand inside the waistband of her pants while she was in her bed try-ing to sleep—constituted "one transaction . . . The sole act involved was touching—not two distinct sexual acts." *Id.* at 341, 631 S.E.2d at 524. Additionally, "there was no gap in time between two incidents of touching . . . ." *Id.*

In *State v. Jones*, the defendant was convicted of two counts of indecent liberties with a minor. 172 N.C. App. 308, 309, 616 S.E.2d 15, 17 (2005). This Court vacated one conviction because the defendant committed only one act against the victim. *Id.* at 314-16, 616 S.E.2d at 19-20. The *Jones* Court stated that while "the statute sets out alterna-tive acts that might establish an element of the offense, a single act can support only one conviction." *Id.* at 315, 613 S.E.2d at 20. However, "multiple sexual acts, even in a single encounter, may form the basis for multiple indictments for indecent liberties." *State v. James*, 182 N.C. App. 698, 705, 643 S.E.2d 34, 38 (2007); *State v. Gobal*, 186 N.C. App. 308, 322, 651 S.E.2d 279, 288 n.7 (2007).

In the instant case, there were clearly two separate acts. The first act was a touching that occurred when defendant removed Kelsey's bra and touched her breasts. The second act was defendant's watch-ing and facilitating Kelsey's sexual encounter with Allen. Each of defendant's acts supports a separate conviction for indecent liberties with a minor. Defendant's assignments of error are overruled.

## IV. JURY INSTRUCTIONS

[3] Defendant argues that the trial court committed reversible error when instructing the jury on finding the defendant guilty or not guilty of the charges against him. We disagree.

Since defendant did not object to the jury instructions at trial, we review for plain error. *State v. Odom*, 307 N.C. 655, 656, 300 S.E.2d 375, 376 (1983). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 378-79. "[E]ven when the 'plain error' rule is applied, '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.'" *Id.* at 660-61, 300 S.E.2d at 378 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L. Ed. 2d 203, 212 (1977)). "This Court has repeat-edly held that a *lapsus linguae* not called to the attention of the trial court when made will not constitute prejudicial error when it is

apparent from a contextual reading of the charge that the jury could not have been misled by the instruction." *State v. Baker*, 338 N.C. 526, 565, 451 S.E.2d 574, 597 (1994); *State v. Hazelwood*, 187 N.C. App. 94, 101-02, 652 S.E.2d 63, 68 (2007); *State v. Laws*, 325 N.C. 81, 98-99, 381 S.E.2d 609, 620 (1989), *judgment vacated*, 494 U.S. 1022, 110 S.Ct. 1465, 108 L. Ed. 2d 603 (1990), *on remand*, 328 N.C. 550, 402 S.E.2d 573, *cert. denied*, 502 U.S. 876, 112 S.Ct. 216, 116 L. Ed. 2d 174, *reh'g denied*, 502 U.S. 1001, 112 S.Ct. 627, 116 L. Ed. 2d 648 (1991).

In the instant case, near the beginning of its charge to the jury, the trial court stated:

Now, members of the jury, as you know, we're trying a number of cases in one trial. There are a total of six cases that you will consider. Each case, members of the jury, will be considered separately and individually as though there were six different trials focusing on that one charge alone. Members of the jury, your verdict in any one case will not affect or be related to the verdict in any of the other five cases. Thus, you may find the defendant guilty on all counts, you may find the defendant guilty on all counts, or you may find the defendant guilty on some counts and not guilty on some counts.

Although the trial court failed, in this portion of its instructions, to instruct the jury that it could find defendant not guilty on all counts, the trial court made this *lapsus linguae* only once and subsequently corrected the charge with further instructions to the jury. In its subsequent instructions on each charge, the trial court stated that there were two possible verdicts in each case—the jury could find the defendant guilty or not guilty. Moreover, when the trial court instructed the jury on the elements of each charge, the court stated that if the jury found from the evidence, beyond a reasonable doubt, that defendant committed the elements of the crimes charged, the jury had a duty to return a verdict of guilty. If the jury did not so find or if it had a reasonable doubt as to one or more of the elements, the jury had a duty to return a verdict of not guilty.

Finally, the trial court stated that, by law, it was required to be impartial and that the jury "should not mistakenly infer or believe that [the trial court has] implied . . . what your findings ought to be." "The Court has no opinion in these cases."

In considering all the instructions and the contextual reading of the charge, it appears that the jury would not have reached a different result but for the *lapsus linguae*. In addition, the error was not

**STATE v. COLEMAN**

[200 N.C. App. 696 (2009)]

the type of error that was " 'so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *State v. McNeil*, 165 N.C. App. 777, 784, 600 S.E.2d 31, 36 (2004) (quoting *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)). In the instant case, the trial court repeatedly instructed the jury that it could find defendant guilty or not guilty of each of the charges. The trial court also stated that if the jury found the State did not prove one or more elements of a charge, the jury had a duty to return a verdict of not guilty as to that charge. Reviewing the charge in its entirety, we find that the jury could not have been misled by the instructions. Therefore, we hold that the defendant was not prejudiced by the trial court's *lapsus linguae*. Defendant's assignment of error is overruled.

[4] Defendant's final argument is that the trial court's instruction to the jury regarding the charge of sex by a custodian was incomplete · and therefore error. Specifically, defendant believes that the instruction should have included that the jury had to be convinced beyond a reasonable doubt that defendant knew or should have known that the victim (*i.e.*, Kelsey) was in his custody as defined by law at the time of the offense. We disagree.

"A trial judge is required by N.C.G.S. § 15A-1231 and N.C.G.S. § 15A-1232 to instruct the jury on the law arising on the evidence. This includes instruction on the elements of the crime." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). Although defendant made a motion to dismiss, he concedes that he did not object to the trial court's instructions on the charge of sex by a custodian. An examination of the transcript reveals that, when making his motion to dismiss at the close of all the evidence, defendant's counsel stated, "There's got to be some knowledge or intent involved in any kind of crime. And if they produce no evidence that he had—and I contend there's absolutely no evidence that he would have known that these girls were from a Kingspointe [sic] Academy Group Home." However, defendant made no request for such an instruction at the charge conference. Therefore, we review defendant's assignment of error under the plain error standard of review. *Odom*, 307 N.C. at 656, 300 S.E.2d at 376; N.C. R. App. P. 10(b)(2) (2009). "A prerequisite to our engaging in a 'plain error' analysis is the determination that the instruction complained of constitutes 'error' at all." *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986). "[W]hen the request is *correct in law* and supported by the evidence, the court must give the instruction in substance." *State v. Ball*, 324 N.C. 233, 238, 377 S.E.2d 70, 73 (1989) (emphasis added).

Since we have determined that defendant's knowledge that the victim was in his custody was not a required element of the charge of sex offense by a custodian, the trial court did not err in failing to include that the defendant knew or should have known that the victim was in his custody in its instruction to the jury. Assuming *arguendo* the defendant had requested such an instruction, since it would not have been "correct in law," the trial court would not have been required to give such an instruction. *Ball*, 324 N.C. at 238, 377 S.E.2d at 73. Defendant's assignment of error is overruled.

## V.  CONCLUSION

Defendant has failed to bring forth any argument regarding his remaining assignments of error. As such, we deem these assignments of error abandoned pursuant to N.C. R. App. P. 28(b)(6) (2009).

We find no error.

No error.

Judges WYNN and ELMORE cocur.